Weimer Unemployment Compensation Case. Atlantic Freight Lines, Inc., Appellant, *v.* Unemployment Compensation Board of Review.

Argued November 12, 1958. Before RHODES, P. J., HIRT, GUNTHER, ERVIN, and WATKINS, JJ. (WRIGHT and WOODSIDE, JJ., absent).

*Ira B. Coldren, Jr.,* with him *Herman M. Buck,* and *Ray, Coldren & Buck,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Thomas D. McBride,* Attorney General, for appellee.

OPINION BY RHODES, P. J., December 9, 1958:

This is an appeal by Atlantic Freight Lines, Inc., from the decision of the Unemployment Compensation Board of Review granting benefits to a former employe, Charles F. Weimer. Atlantic contends that claimant was ineligible for benefits under section 402 (e) of the Law, 43 PS §802 (e), which provides: "An employe shall be ineligible for compensation for any week— . . . (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is 'employment' as defined in this act; . . ."

Claimant was last employed by Laughery Auto Wreckers, Hopwood, Pennsylvania, his last day of work being November 23, 1957. He had a valid separation from that employment, but, due to the fact that his total wages amounted to less than eight times the weekly benefit rate, the board reverted to his prior employment with Atlantic Freight Lines, Inc., Uniontown, to determine his eligibility. See section 401 (f) of the Law, 43 PS §801 (f). Claimant had been employed by Atlantic for approximately nine years prior to his discharge, on November 8, 1957, because of an

incident occurring on October 27, 1957. On the latter date claimant reported to the garage of Atlantic located on Stewart Avenue, Uniontown, to pick up his tractor, the bills of lading, and the turnpike tickets for his assigned trip to New York. Through an oversight claimant left the garage without these papers. He proceeded to the terminal safety line of Atlantic at another point in Uniontown. He left the safety line at the terminal with his tractor-trailer, and thereafter discovered the absence of the bills of lading and turnpike tickets. Claimant contacted the garage on Stewart Avenue and a driver advised him that the papers would be delivered to him in approximately a half hour. Rather than wait this length of time claimant returned through Uniontown to the garage on Stewart Avenue where he acquired the necessary papers. He then proceeded over new route 119, and at a point approximately a mile and a half north of Uniontown he became involved in an accident in which two persons were killed. He was exonerated. The following day claimant was suspended for an alleged violation of the employer's route instructions, and was discharged on November 8, 1957.

The route instruction alleged to have been violated, according to the evidence submitted by Atlantic, was one requiring drivers to proceed north toward the Pennsylvania Turnpike from the terminal safety line by old route 119 in preference to driving through Uniontown to new route 119. The old route 119 and the new route 119 run northwardly parallel to each other and converge at a point approximately five miles north of Uniontown. The new route is modern and better paved.

The bureau determined that the claimant was eligible for benefits. On appeal by Atlantic the referee believed that claimant had been guilty of willful mis-

conduct and denied compensation. The board, however, reversed the referee and found claimant eligible for benefits.

The essential issue in the case was a factual one. Atlantic claimed that it had issued definite instructions to use the old route 119, forbidding its drivers from proceeding through the municipality of Uniontown in order to get to the turnpike; claimant's evidence contradicted the existence of such regulation.

The board resolved the conflict in favor of claimant, and found: "Neither the claimant nor any of the other of the employer's drivers ever received any specific instructions not to use the route involved. In fact, over the years, it was quite common for all drivers to go through town [on] many occasions for many purposes; and never was there any reprimand or counter instructions from the employer. Even if the employer had issued specific orders not to drive through town, the order was many years old, not issued in the formal book of instructions and was never enforced." Having resolved the conflict the board concluded that claimant was not guilty of willful misconduct in proceeding from the safety line to the Stewart Avenue garage to pick up his papers and in proceeding from there by the new route 119 toward the turnpike. It is fundamental that the credibility of the witnesses and the weight of their testimony are for the board acting in its capacity as finder of the facts. That the referee may have chosen to believe the witnesses of Atlantic is of no moment.

It is the board and not the referee which is the final arbiter of factual issues. *Hamilton Unemployment Compensation Case,* 181 Pa. Superior Ct. 113, 119, 124 A. 2d 681.

Moreover, the accident on new route 119 occurred approximately one and a half miles north of Union-

town. Since, according to the testimony of Atlantic, the purpose of the alleged rule requiring the use of the old route 119 from the safety line in order to reach the turnpike was to avoid the congestion in the streets of Uniontown, the use of new route 119 and the occurrence of the accident north of the city had no direct relationship to the purpose of the purported rule or regulation in this instance. It also appears from the map furnished the Court that after claimant returned to the Stewart Avenue garage it was more convenient to proceed on new route 119 than to again go through the congested streets of Uniontown to reach old route 119. However, the basic issue being factual and having been ultimately resolved in favor of claimant, this Court will not disturb the conclusion of the board granting compensation.

The decision is affirmed.